IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MELISSA SINGER-REED, | : |
| *Plaintiff*, | : Case No. 1:22-cv-32 |
| vs. | : Judge Jeffery P. Hopkins |
| PLANES MOVING & STORAGE, INC., *et al.*, | : |
| *Defendants*. | : |

**OPINION AND ORDER**

Currently before the Court is Defendants' Motion to Dismiss or, in the Alternative, to Stay Pending Arbitration ("Motion") (Doc. 11). Defendants Planes Moving & Storage, Inc. ("Planes") and Global Workplace Solutions, LLC ("GWS") (collectively, "Defendants") submit that the claims of Plaintiff Melissa Singer-Reed ("Singer-Reed") are subject to a mandatory arbitration agreement between the Parties. Doc. 11, PageID 44. Moreover, Defendants contend even a determination regarding the validity of that arbitration agreement has been delegated to an arbitral forum. *Id.* at PageID 49. Consequently, Defendants move to compel the Parties to arbitration and dismiss this action or, alternatively, issue a stay pending arbitration. *Id.* at PageID 44. Meanwhile, Singer-Reed would have the Court weigh in on whether the Parties' arbitration agreement is cost-prohibitive for her or otherwise violative of her statutory rights. Doc. 12, PageID 74–75. In either event, Singer-Reed argues that her case may only properly be heard in this Court. *Id.* at PageID 75.

Ultimately, the Court **GRANTS** Defendants' Motion to Dismiss or, in the Alternative, to Stay Pending Arbitration Doc. 11. In doing so, the Court **COMPELS** the Parties to arbitration and **STAYS** this matter pending those arbitration proceedings.

I.      BACKGROUND

This case stems from Singer-Reed's prior employment with Defendants. *See* Am. Compl., Doc. 5, ¶ 10. In 1999, Planes hired Singer-Reed as a Vice President of Business Development. *Id.* By 2004, Planes formed a subsidiary, GWS, and Singer-Reed's employment duties overlapped between the two businesses. *Id.* at ¶¶ 13–14. In essence, Singer-Reed was a sales consultant, tasked with building Defendants' book of corporate clients. *Id.* at ¶ 16. Singer-Reed stayed in this role until around August of 2020, when she presumably resigned. *Id.* at ¶ 10.

On February 4, 2019, Singer-Reed and Defendants entered into a new sales consultant agreement (the "Agreement"), which would shape the Parties' employment relationship going forward. *Id.* at ¶ 15. Relevant here, the Agreement also included a broad arbitration provision stating:

> any dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of this Agreement or the relationship of the parties shall be settled by binding arbitration . . .

Doc. 11-1 at PageID 66.

After her employment with Defendants had ended, Singer-Reed filed her Complaint in the instant action on January 14, 2022. Compl., Doc. 1. She subsequently amended her Complaint as a matter of right on February 1, 2022. Am. Compl., Doc. 5. In the Amended Complaint, Singer-Reed alleges Defendants offered her male counterparts opportunities that they did not provide her, despite her excellent job performance. *Id.* at ¶¶ 22–25, 28–29.

Further, Singer-Reed alleges that she was underpaid relative to her male counterparts by more than $100,000.00 per year. *Id.* at ¶ 27. Accordingly, Singer-Reed has alleged claims against Defendants for gender discrimination, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (Count I), and Ohio Revised Code, Chapter 4112 (Count II). *Id.* at ¶¶ 41–54.

Defendants then filed the present Motion on April 28, 2022. Doc. 11. Singer-Reed filed her response in opposition to Defendants' Motion on May 19, 2022 (Doc. 12), and Defendants filed their reply in support of the Motion on June 2, 2022 (Doc. 13). Defendants' Motion is ripe for review and decision.

## II. STANDARD OF REVIEW

"The proper vehicle for dismissing a case in favor of arbitration is pursuant to Fed. R. Civ. P. 12(b)(6)." *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp. 3d 1257, 1262 (S.D. Ohio 2020). A party who seeks to litigate a cause of action in federal court despite the existence of an otherwise compulsory arbitration agreement fails to state a claim. *Id.* (quoting *Knight v. Idea Buyer, LLC*, 723 F. App'x. 300, 301 (6th Cir. 2018)).

Usually, to survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before

3

defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

This standard differs, however, where Rule 12(b)(6) has been invoked to dismiss an action in favor of arbitration. *Pinnacle Design*, 490 F. Supp. 3d at 1262 (citation omitted). In such circumstances, a court's determination is not necessarily based on the viability of a plaintiff's claim, "but, instead, concerns whether [the court] or an arbitrator should hear it." *Id.* When faced with an arbitration agreement, courts are to remain mindful of the strong federal policy in favor of arbitration. *Trout v. Univ. of Cincinnati Med. Ctr., LLC*, No. 1:22-cv-36, 2022 U.S. Dist. LEXIS 147829, at *3, 2022 WL 3446349, at *1 (S.D. Ohio Aug. 17, 2022) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Federal policy further dictates that courts analyze the enforceability of an arbitration agreement pursuant to "state-law principles governing contract formation . . . ." *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 840 (S.D. Ohio 2021) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

By any standard, a district court considering a Rule 12(b)(6) motion, "'may consider exhibits attached [to the complaint], public records, items appearing in the record of the case

and exhibits attached to [movant's] motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein . . ..'" *Pinnacle Design*, 490 F. Supp. 3d at 1262 (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)). Courts are generally permitted to liberally construe what matters "fall within the pleadings for purposes of Rule 12(b)(6)." *Pinnacle Design*, 490 F. Supp. 3d at 1262 (citing *Armengau v. Cline*, 7 F. App'x. 336, 344 (6th Cir. 2001)). Still, courts must only consider supplemental documentation when deciding a Rule 12(b)(6) motion where it is "'clear that there exist no material disputed issues of fact concerning the relevance of the document[s].'"[1] *Pinnacle Design*, 490 F. Supp. 3d at 1262 (quoting *Mediacom Se. LLC v. Bellsouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012)).

### III. LAW AND ANALYSIS

At the outset, the Court finds it helpful to narrow the issues here. The Federal Arbitration Act ("FAA"), namely 9 U.S.C. § 2, provides that when a contract involving commerce contains an arbitration provision, that provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . .." 9 U.S.C. § 2. The FAA, in pertinent part, additionally requires that:

> [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

---

[1] In this case, the Agreement at issue is explicitly referenced in Singer-Reed's Amended Complaint and there is no dispute as to the Agreement's relevance. Am. Compl., Doc. 5, ¶ 31. Therefore, the Court may properly consider the Agreement in deciding Defendants' Motion.

Although the Parties disagree as to whether Singer-Reed's claims should be subject to arbitration, there is no dispute that the Parties entered into an arbitration agreement. Rather, Singer-Reed contends that the arbitration agreement she entered into is unenforceable on two grounds. Doc. 12, PageID 79–82. First, Singer-Reed challenges the whole of the arbitration agreement as cost-prohibitive. *Id.* Second, she posits that the Parties' arbitration agreement curbs her statutory rights by divesting any arbitrator of the authority to award her punitive damages if her claims are successful. *Id.* at PageID 82. Importantly, Singer-Reed argues that the Court should decide whether the Parties' arbitration agreement is enforceable in light of these challenges, rather than a panel of arbitrators. *Id.* at PageID 78–79. By contrast, Defendants claim that the enforceability of the Parties' arbitration agreement is an issue that has been properly delegated to arbitration in the first instance. Doc. 11, PageID 49–50.

Thus, the formation of an agreement to arbitrate on the merits is not at issue. The Court must chiefly consider whether the arbitrability of Singer-Reed's claims is an issue for the Court or an arbitrator to decide. Because the Court ultimately finds that an arbitrator must determine the arbitrability of Singer-Reed's claims, the Court also must discern whether to dismiss the current action or stay these proceedings pending arbitration. The Court takes each issue in turn.

A. **Arbitrability of Singer-Reed's Claims**

As this Court earlier determined, and as mandated by the FAA, "arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Similar to any contract, courts interpreting arbitration agreements may generally consider the agreement's enforceability when presented with "'generally applicable contract defenses, such as fraud,

6

duress, or unconscionability.'" *Id.* at 68 (quoting *Dr.'s Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

However, with appropriate consent, contracting parties have the freedom to "form multiple levels of agreements concerning arbitration." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024). Within this context, contracting parties may agree "'that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.'" *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)). The Supreme Court has essentially referred to such "delegation provisions" as arbitration agreements unto themselves within a broader agreement to arbitrate. *Rent-A-Ctr.*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to endorse."). Courts asked to enforce an alleged delegation agreement must presume that the contracting parties did not intend for an arbitrator to decide these gateway issues. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Instead, courts should only enforce a delegation agreement where "there is 'clea[r] and unmistakabl[e]' evidence" that the parties intended to settle threshold issues concerning arbitrability through arbitration to begin with. *Id.* (quoting *AT&T Technologies., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)) (alterations in original).

Again, like all contracts, the FAA does afford a party the right to challenge even a clear and unmistakable delegation agreement "'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Rent-A-Ctr.*, 561 U.S. at 70 (quoting 9 U.S.C. § 2). Though, that challenge must attack the "delegation [agreement] specifically . . . ." *Id.* at 72. If a party raises concerns with respect to the arbitration agreement as a whole, the reviewing court must then "treat [the delegation agreement] as valid under [9 U.S.C.] § 2, and must

7

enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.*

Here, the Court finds that the Parties agreed, through a clear and unmistakable delegation provision, to submit all issues surrounding the arbitrability of Singer-Reed's employment-related claims to arbitration. The Parties' Agreement states, in no uncertain terms, that "any dispute or controversy arising out of, relating to or in connection with the *interpretation*, *validity*, construction, performance, breach or termination of this Agreement . . . . shall be settled by binding arbitration . . . ." Doc. 11-1, PageID 66 (emphasis added). Singer-Reed does not dispute her assent to this agreement or the clarity of its presentation. And so, the Court must find that a valid agreement to delegate the arbitrability of Singer-Reed's claims is at play in this case.

Moreover, the Court also finds that Singer-Reed's arguments challenging the enforceability of the Parties' arbitration agreement must fail. On either of the two grounds under which Singer-Reed argues unenforceability, she references the arbitration clause as a whole rather than addressing the delegation language specifically. *See* Doc. 12, PageID 81–82 ("Accordingly, the Court should find the Arbitration Clause to be unenforceable based on its extreme cos[t]-sharing provision."); *see also* Doc. 12, PageID 82 ("[T]he Arbitration Clause's limitation on punitive damages undermines the rights protected by the Ohio Revised Code, and it is therefore unenforceable."). Particularly relating to her claim that arbitration would be too costly, Singer-Reed is certainly entitled to "an opportunity, prior to arbitration *on the merits*, to demonstrate that" arbitration would be cost-prohibitive. *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir. 2003) (emphasis added). However, with the existence of a valid and enforceable delegation agreement, she is not entitled to have that issue decided

8

by the Court. Under the Supreme Court's precedent—absent a specific challenge to the delegation provision at issue—Singer-Reed's arguments are for an arbitrator, not the Court to decide. Therefore, the Court finds it appropriate to compel the Parties to arbitration, as required by 9 U.S.C. § 4.

B. <u>Stay/Dismissal</u>

The Court must then determine whether to stay this litigation pending arbitration or dismiss the action altogether. Defendants would have the Court dismiss Singer-Reed's claims outright because all of her claims are subject to mandatory arbitration. Doc. 11, PageID 54–55. Though, Defendants do vie for a stay pending arbitration, in the alternative. *Id.* at PageID 55. For her part, Singer-Reed contends that if the Court compels arbitration, as it has done here, the Court may only appropriately issue a stay pending arbitration. Doc. 12, PageID 87–88. Singer-Reed additionally argues that any stay in this case should be limited to her claims against Planes, leaving those same claims against GWS within the Court's immediate reach. *Id.* at PageID 89.

To start, the Court's decision in this instance will apply equally to both Defendants. Singer-Reed has definitively alleged that "it is difficult to discern where Planes ends and GWS begins, and for all purposes relevant to this action, they are one and the same company." Am. Compl., Doc. 5, ¶ 14. By her own theory of the case, Singer-Reed has deemed Defendants legally indistinguishable for purposes of her employment claims. The Court will not endorse this method of using one theory to justify bringing claims against a party in the first place, only to discard it when convenient and proceed against that party on the same claims anyway. The Amended Complaint governs.

Substantively, the Court has determined to stay this litigation pending arbitration. The Sixth Circuit has recognized a circuit split over how much discretion a district court has when considering whether to dismiss or stay an action once the parties have been compelled to arbitrate. *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x. 374, 379–80 (6th Cir. 2021). On the one hand, the FAA clearly states that upon referring a matter to arbitration, the court "shall on application of the parties stay the trial of the action . . . ." 9 U.S.C. § 3. Despite this strict statutory language, the Sixth Circuit has often taken a more liberal approach, whereby a district court may choose to dismiss an action if "it is clear the entire controversy . . . will be resolved by arbitration." *Anderson*, 860 F. App'x. at 380. By either token, a district court should stay such matters pending arbitration where arbitration will not clearly resolve a dispute once-and-for-all. *Id.*

Currently, the Court cannot say with any degree of certainty that Singer-Reed's claims will be completely resolved by arbitration. The Court has just found that Singer-Reed's arguments pertaining to the enforceability of the Parties' arbitration agreement must be made to an arbitrator and the Court expects that they will be. The Court expressly takes no view as to the enforceability of the arbitration agreement. Yet, a dismissal of this action now would undoubtably prejudice Singer-Reed in the future if her arguments are successful at arbitration. Further, to dismiss Singer-Reed's case outright might subject her to statute-of-limitations concerns, through no fault of her own. With these unknowns, fairness requires that Singer-Reed have a viable path back to this Court if necessary. Thus, the Court will stay this matter pending arbitration, as compelled in this Order.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' Motion to Dismiss or, in the Alternative, to Stay Pending Arbitration (Doc. 11). Accordingly, the Court hereby **COMPELS** the Parties to arbitration and **STAYS** this litigation pending arbitration. The Court further **ORDERS** the Parties to advise the Court when that arbitration is complete by filing a joint status report fourteen days after the conclusion of those proceedings.

**IT IS SO ORDERED.**

September 6, 2024

Jeffery P. Hopkins
United States District Judge